UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE CRAMER, an individual
d/b/a Allstar Books,

    Plaintiff,

v.

RONALD VITALE, YORKSHIRE FOOD
MARKET, CITY OF DETROIT, a municipal
corporation, and CITY OF DETROIT
BOARD OF ZONING APPEALS,

    Defendants.

_____/

Case No. 04-70712

Hon. John Corbett O'Meara

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART THE CITY OF DETROIT'S
MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant City of Detroit's motion to dismiss or for summary judgment, filed June 13, 2005. Plaintiff filed a brief in response on July 12, 2005. The court held oral argument on October 6, 2005, and, for the reasons stated below, granted in part and denied in part the City's motion.

**PROCEDURAL HISTORY**

Plaintiff brought this action against Defendants Yorkshire Food Market, Ronald Vitale, and the City of Detroit in Wayne County Circuit Court. Plaintiff filed an amended complaint on February 5, 2004, which asserted the following counts: Count I, "Gross Negligence Governmental Immunity" (against the City); Count II, Violation of 42 U.S.C. § 1983 (takings claim) (against Vitale and the City); Count III, First Amendment violation (against Vitale and the City); and Count IV, Nuisance (against all Defendants). Defendants removed this action to

this court, which remanded the state claims (Counts I and IV) to Wayne County.

Defendants Yorkshire Food Market and Vitale moved for summary judgment on Plaintiff's remaining federal claims on May 13, 2004. After a hearing on August 20, 2004, the court granted Defendants' motion for summary judgment on the basis that the private defendants were not state actors and could not be liable under § 1983 or for First Amendment violations. The court further granted a motion for Rule 11 sanctions against Plaintiff.

At this time, the only remaining claims are Plaintiff's takings and First Amendment claims against the City of Detroit. The City has moved for summary judgment.

## BACKGROUND FACTS

Plaintiff, Mike Cramer, owns Allstar Books on Mack Avenue in Detroit. The side of Plaintiff's building is visible from the street and is adjacent to a parking lot owned by the neighboring Yorkshire Food Market (owned by Ronald Vitale). For many years prior to Plaintiff's purchase of the building, a Yorkshire Food Market advertisement was painted on the side of the building. When Plaintiff purchased the building, he had a mural painted over the Yorkshire advertisement, which proclaimed the name of his bookstore and which contained large, colorful, cartoon-like heads with fangs, horns, and what appear to be laser beams shooting from their eyes. See Pl.'s Exs. 4, 9. Plaintiff obtained a sign permit for his advertisement/mural from the Detroit Building and Safety Engineering Department. See Pl.'s Ex. 2 (Affidavit of M. Cramer).

Subsequently, Vitale sought to erect a billboard directly in front of, and completely obscuring, Plaintiff's advertisement. Vitale erected his billboard, which was not in conformance with Detroit zoning regulations. Apparently, although the City initially provided a permit for

Vitale's sign, it withdrew the permit after Plaintiff complained. Nonetheless, according to Plaintiff, Vitale's sign (which Plaintiff claims was initially blank) remained in place.

After the his permit was withdrawn, Vitale appealed to the Detroit Board of Zoning Appeals ("BZA"). A public hearing was held and both Vitale and Plaintiff were present, represented by counsel, and had an opportunity to be heard. The Board also heard comments from neighbors who supported Vitale's billboard, because they did not like Plaintiff's sign and preferred Vitale's. See Pl.'s Ex. 1 (transcript) ("And I was appalled at the signage that went up next door to the comic bookstore. It was horrible to have to drive pass [sic] that every day. So this, in my mind was a wonderful community service that Yorkshire Market is providing to erect a sign in front of it."). The BZA granted Vitale's request for a variance, allowing his sign to remain and to completely obscure Plaintiff's sign. The BZA issued its decision on May 8, 2003.

Plaintiff did not appeal the BZA decision to the Wayne County Circuit Court, as is permitted by M.C.L. 125.585. Rather, Plaintiff filed this action challenging the constitutionality of the BZA decision. Plaintiff alleges that the BZA decision affected a taking of his property without just compensation because he has lost the use of his building sign. Plaintiff also asserts that the BZA decision was motivated by a dislike of the content of his sign, thus infringing on his First Amendment rights.

**LAW AND ANALYSIS**

The City argues that this court lacks jurisdiction to hear Plaintiff's claims because he failed to timely appeal the BZA decision. Although Plaintiff may be precluded from appealing the BZA decision at this point, Plaintiff is not necessarily barred from pursuing constitutional claims related to that decision, as he does here. See Williamson Cty. Regional Planning Cmm'n,

473 U.S. 172, 192 (1985) (noting that exhaustion of administrative remedies, such an appeal, is not required to bring § 1983 claim). A related issue, although not raised by the City, is whether Plaintiff's takings claim is ripe for review.

## I.  **Ripeness of Takings Claim**

"Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed. This deficiency may be raised sua sponte if not raised by the parties." Bigelow v. Michigan Dept. of Natural Resources, 970 F.2d 154, 157 (6th Cir. 1992) (citation omitted). In the context of a takings claim, the claim is not ripe until (1) a final decision is rendered "that inflicts an actual, concrete injury"; and (2) the injured party seeks compensation through the procedures provided by the state. Williamson, 473 U.S. at 192-194. The second requirement recognizes that the "Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." Id. at 194.

Michigan provides a remedy for takings – an inverse condemnation claim. In order for Plaintiff's taking claim to be ripe, he must have attempted to use Michigan's inverse condemnation procedure or must establish the inadequacy of the procedure under these circumstances. See Bigelow, 970 F.2d at 157-58 (federal taking claim not ripe where plaintiff failed to avail himself of inverse condemnation procedure). In this case, Plaintiff has not pursued an inverse condemnation claim. Plaintiff claims, without support, that his "cause of action in the State Court constituted an inverse condemnation claim." Pl.'s Br. at 10. This court remanded Plaintiff's nuisance and negligence claims to state court, where they were dismissed. Plaintiff has provided no evidence that he has asserted an inverse condemnation claim in state

court. Accordingly, Plaintiff's taking claim is not ripe and must be dismissed for lack of subject matter jurisdiction.

## II.  First Amendment Claim

The City asserts that Plaintiff cannot sustain his First Amendment claim because he cannot show that the City took any intentional and direct action against him that restricted his freedom of speech. The City did not "regulate" Plaintiff's sign or force him to remove it, as might be the usual First Amendment case. Rather, the City granted a variance that allowed Vitale to completely cover Plaintiff's sign. Plaintiff essentially argues that the City chose Vitale's sign over his because the Board of Zoning Appeals preferred the look of Vitale's sign.

The First Amendment protects both commercial and non-commercial speech. "The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation." Central Hudson Gas & Elec. Corp. v. Public Serv. Cmm'n of New York, 447 U.S. 557, 560 (1980). Although the parties have not briefed this issue, Plaintiff's mural appears to have elements of both commercial and noncommercial speech, as it advertises his bookstore and contains artistic elements.[1]

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys. . . .  In the realm of private speech or expression, government regulation may not favor one speaker over another. Discrimination against speech because of its message is presumed to be unconstitutional." Rosenberger v. Rectors and Visitors of the Univ. of

---

[1] The City claims that Plaintiff's sign is purely commercial speech that is deserving of a lesser standard of First Amendment protection than noncommercial speech. The City does not, however, even attempt to demonstrate that it can meet the standard outlined in Central Hudson, which requires that governmental regulation of commercial speech advance a "substantial" government interest. Central Hudson, 447 U.S. at 566.

Virginia, 515 U.S. 819, 828 (1995).

Upon reviewing the pictures of Plaintiff's sign and Vitale's sign, as well as the BZA hearing transcript, the court finds that a jury could reasonably infer that the BZA allowed Vitale's sign to remain because Plaintiff's sign may not be considered aesthetically pleasing to the average viewer. The court questions whether, had Plaintiff painted a more conservative or traditional mural on his building, the BZA would have allowed Vitale to completely obscure it. At the BZA hearing, neighbors made clear that they preferred the look of Vitale's sign to Plaintiff's. While the evidence of the BZA's intent is circumstantial, a reasonable juror could infer that BZA essentially chose Vitale's sign over Plaintiff's based upon its expression and content, which it is not constitutionally permitted to do. Accordingly, the City has not met its burden of demonstrating that it is entitled to summary judgment on Plaintiff's First Amendment claim.

### III.    Equal Protection and Nuisance

In his brief, Plaintiff refers to Vitale's sign as a "nuisance per se." As discussed above, there is no nuisance claim pending, because it was remanded to state court. Plaintiff also refers to a violation of his equal protection rights in his brief. However, Plaintiff failed to plead an equal protection claim in his Complaint, so that concept is not relevant here.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant, City of Detroit's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, consistent with the above opinion.

s/John Corbett O'Meara
Hon. John Corbett O'Meara
U.S. District Court Judge

Dated: October 18, 2005